Good afternoon, ladies and gentlemen. We're here for our pre-hearing on Baca, in your case, of Teixeira v. County of Alameda. As you can see, we have Mr. Scholl appearing by video from Seattle. Can you arrest Mr. Scholl? Yes, go ahead. Good to see you. Great to see you. Good afternoon. I'm here to report about the criminal representing the impounds. The case before you is here on April 12th, so this review is de novo. Valerie De Cuny would be required to treat my client's sick mind at an abortion clinic, a bookstore, a pharmacy, something contraception, or newspaper, something print. This case must be sent back to the trial court. It's the only way to produce evidence that there's a public safety threat to the residents of Santa Clara County before being able to impose this wholly arbitrary 500-foot rule that was designed and intended to stop new gun stores from opening in Alameda County. That is the only rule that is challenged in this case. Are we under some new restriction? Are we under regulation that the county sought to impose on us? Mr. O'Connor. I'm going to interrupt you for just a second over here. Oh, excuse me. The county also urged that there be some sort of static standards that would justify the regulation. Well, if it wasn't a static standard, your Honor, then it gives you the first amendment cause of action. The problem is that the static issues were addressed in the variance by the county's zoning board that issued their emphasis. The zoning board initially approved our variance. They found that there was a need for the products and services our clients wanted to offer, that there were restrictions and regulations to be put in place regarding security of the building, parking, storage of outside open materials like gunpowder, powers of operation. All of those were going to be met and deployed by the gun stores. There was even a requirement that my clients picked up the litter in the parking lot. As it so happens, I went and drove by the site at Llewellyn on the way into court this morning. Located at that address now is a car-loaned finance company where I can stock your car with a title and get, I guess you could call it a P&A loan. Both of the other businesses are located in that tiny little patch of concrete that is next to a 24-foot retaining wall of the 880. It's an upholstery shop, a 7-Eleven, a paint store, and a thrift store across the street. So this is not an existing building. Is it an existing building? It certainly is. The complete description of the site and the site uses and the previous variances is in the record. I believe it's part of the exhibits in the exhibit director. In fact, if this court could look at only one part of the record, I would ask it to take a look at 10 of 7 in the excerpt of the record starting at page 177 through 183. That sets forth the West Coast County Board's zoning approval of my client's variance. And it lists all of the regulations my clients were prepared to comply with. It also lists the factors. The variance that you're challenging is really the 700-foot wall, right? That's what you needed the variance for. That's correct. And so that's the real issue we have to decide is whether or not the failure to afford that variance was arbitrary and capricious and the justification for the 500-foot wall. Well, that's correct, Your Honor. That's why we have both the past client and the future client. The question is arbitrary and capricious. My understanding, Your Honor, is I think I'm right. You're going to second amendment to all the disputes that you have. I mean, I've got zero disputes in Philadelphia. We're not taking the right to buy and sell firearms. It's part of the right to keep and bear arms. A buy is when a thing sells enough or so. What do you do if a buy is sold? Well, for one thing, this circuit is very clear. For instance, in the case of Isaacson, licensed abortion providers can assert the rights of their clients and patients. My question is, are you asserting the rights of their clients? Both my parties would be asserting the rights of their potential customers. Are you showing that there was some interference with your ability to purchase guns? Do you have that to show? We didn't have. We didn't have any current customers. We were never allowed to open. We did have institutional plaintiffs, the Calvin Foundation and the Second Amendment Foundation, full of members. They've been now being accounted for by guns for my clients and it's a pretty nice rumor. Well, the question is, what do they have? Is there any interference with your second amendment rights to buy guns, assuming that there is one, in general? Well, if there is a prohibition on the opening of new guns in the first million for Virginia, Alameda County, Your Honor, there will be a diminution in the future of buying small guns in Alameda County and Alameda County. Is there a prohibition like that in the complaint? Excuse me? That's not you, but then your clients are going to have a problem buying guns in Alameda County. They're going to have a problem now buying guns in Alameda County. First of all, the unincorporated thing is a little peculiar because the unincorporated part of Alameda County is a very small part of Alameda County in terms of population, right? Well, I don't know the answer to that question. It doesn't have the major commercial areas, so what do you want to make out of Alameda County and also your consultations in general? Well, most gun stores are located, for instance, in Dublin, in three farms, and at least in Newark, there are no gun stores in the city of Oakland. The unincorporated area of Alameda County was where the original sites of my clients sought to open and store. The only thing that disqualified them was this 500-foot rule, which we contend is wholly arbitrary. There's no showing at the Alameda County. You're here right now claiming that an administrative mandate is proceeding in California, and you didn't. We didn't proceed in California. In 18 years, you're presumed trying to raise the issue of the right to sell. The right to sell and the right to service, that's the first thing you're presuming is too bad. Nobody has the right to sell, the right to create, the right to buy, or the right for somebody to possess a handgun or whatever under Heller. How do you get to the right to sell? Where in Heller does it say there's a right to sell? Well, where in this amendment does it say there's a right to sell? Well, Your Honor, several places. For example, Heller's Rights Standards versus State of Tennessee case of the 1850s basically says that the right to keep and bear arms necessarily involves the right to purchase them, to keep them in a state of efficiency for use, to purchase and provide ammunition suitable for such or such keeping and repair. This circuit in Jackson said there was a right to buy and sell ammunition. It's inconceivable that there would be a right to buy and sell ammunition in this circuit, but not a right to buy and sell ammunition. As I see it, there is. There's not a total. There's not a total. But yeah, on the right to sell, Your Honor, there's a slot on it. That's the first amendment. The first amendment complaining, Your Honor, says that it is virtually impossible to open a consular and incorporate it into Alameda County. That's the only burden that we need to easily gain or that we need to meet. There are other stores in Alameda County. There are other stores in Alameda County. That's the evidence. We're going to cease. The report was submitted by the local zoning board. That's correct, Your Honor. We did an informal survey to kind of update. One of my clients is the California Methanol Association, which is an industry association. We did an informal survey of other gun stores in unincorporated Alameda County and non-corporated Alameda County. Two of them do not send handguns to the public. Two of them are gunsmithing only. And one of them, only one store, actually sells all varieties of long guns, handguns, and rifles. So the idea is basically you can't get a report from the city to the county attached to the analysis. No, Your Honor. The evidence that's before this court is the first amendment complaining that the exhibits that are being attached are the exhibits from the, as I recall, are the exhibits that the local zoning board produced the reports. The local zoning board said there was a need for my client's products. There was a market for their products. Part of the record of the consumption order report. Part of the need, right? The Bill of Rights isn't a Bill of Rights. They are a gun store. I mean a gun store. Sorry, I keep saying that. Is there some kind of fees when you're storing them? Yes, Your Honor. If I go out to a gun site this morning, you can stand in the parking lot on the right side where my price for one of those gun stores was, and there is a Big Five, you know, big box of sporting goods stored across the street. You're right. You're right. I just realized that. Because the Big Five does not sell handguns to the public. The Big Five does not support private party transfers between private parties. The Big Five does not offer gunsmithing services. The Big Five does not offer other safety courses. My clients had a unique product and a unique pitch to sell in the location that they chose. And Alameda County frustrated that. The Board of Supervisors frustrated that. What they vetoed is variance. What we consider to be animus towards this particular amendment. There were people who objected that the residential zone varies across eight lanes of the 880 freeway. You can't even see this residential zone from my client's door. It's a beach. There's no flying pets. I don't like to be able to fly pets. Can we also, can we also pledge that the enduro services offer training and safety services? Is that what I'm offering or not? Well, correct me if I'm wrong. One of the things that gun stores do in order to help fill the state of California mandates and gun safety certification, you can purchase handguns in California. Some stores offer those tests and some stores don't offer those tests. This allegation is that most of the other retail stores in Alameda offer that type of service. No, we do not make that allegation. We make the allegation that our clients were prepared to offer that service and the zoning board agreed that that was the service that was necessary in that location. And in your view, is gun protection under the second amendment the right to offer safety? For sure. And the best case or point of that is the SL case under the seventh circuit where the city of Chicago tried to ban or restrict location and the operation of gun ranges at the very same time. The state of Illinois and the city of Chicago mandated training for firearms and firearm safety. We have the same circumstance here. California mandates safe training, safe storage. They also mandate at the point of sale and at the point of receiving a firearm that the person who's purchasing it demonstrates these handling characteristics that they'd be able to produce, proves that they own and don't seize, and they can safely store their firearms. All of these are full range of services that are offered by these small, mom-and-pop dreaded gun stores that are not offered at these big box sporting goods or big five sporting goods. In your view, that is just because existing retail establishments and the AHA, general sporting goods stores, do not meet the customer needs and demands. What customers needs and demands are those? Also, on TMR, big five and JICs do not offer guns meeting services. And my clients who are experienced in this business, they're prepared to offer those services. They also offer gun safety training. They also offer that gun stores aren't as varied as the people who sell guns for owners. Some people like target shooting. They think they're interested in that. Some people are interested in hunting and being in the field with their firearms. That's a different kind of brand or a different trust for marketing. Some people really just want to have a handout for self-defense. So, finding a niche market in a very competitive area where you can have gun stores is very tough to do. And our clients were prepared to meet that. Part of the record is that my clients actually surveyed the neighborhood. They had statements from 1,400 people in the neighborhood who said, they would like these figures for their neighborhood. My clients crossed every T, dotted every I, except that they were 480 feet from a residential district where it was main lanes and a three-way, but it was where you go for dating. That was the only requirement they didn't meet. So, why is it that there are residential areas that they were less than 5 feet from? There's one house that is on the same side of the three-way. They did not want you in the three-way. Why is that a concern? Because some of the board supervisor's verification of the variance was complained by the San Francisco Owners Association, which is what's behind the three-way. That was the only reason. I think that is a concern. You're supposed to write what you're doing for the entire spot. That's not, of course, a three-way. Yeah, and I drove by that house this morning, and it's this odd little one, small, modest home in the middle of an industrial residential, a mixed-use area. But, you know, right next to it is a tire store. On the other side of it is another big supermarket. So, this little house has managed to, you know, maintain its mentioned area. You know, I would almost encourage anybody on this panel to maybe, you know, do a little search of those here. You know, those citizens. I don't think we're going to embrace that. But you can drive by, decide yourself, and take a look at it. It's a perfect place for a gun store, Mr. Jordan. Could we decide this case by declaring that there is an ancillary right for the type of services that you've listed, particularly safety training and so on, in order to satisfy state law without having to declare that there's a constitutional right to sell firearms? Thank you. I think that there already is a constitutional right to buy and sell firearms. People don't make firearms in their basements. You don't agree with your premise, right? And the question is, can we decide that in order to preserve the second amendment right to keep and bear arms, that the law must afford or make an accommodation for ancillary services, including gun smithing, gun safety training, in order to comply, not only with state law, but also to make sure that the firearms are operable, which the Supreme Court has declared may be counted for defense for part of the new law. If you're asking me whether to take a win under any reason, the answer is yes. I'm trying to determine whether there's a principled distinction between Well, I think one of the differences is, if we write a jurisdiction like Oklahoma or Idaho or Texas or Montana, where commerce in firearms is not as heavily regulated as it is in California, you might have a point. The problem is, in California, every single commercial transaction must go through a dealer, but the dealer is essential to the transaction. If you want to buy it down in California, you have to go through a dealer. It's a mandatory part of the process. There are minor exceptions, like in the areas of firearms, but if we were to think of a way to transfer a firearm to somebody who was from any areas, there would be very few firearms in the area of California. Well, since we focused on the commercial area, I'm surprised that you haven't focused on how there's keyboarding footage. And it says that nothing in my opinion, as the Supreme Court said, would be taken to cast doubt on the laws and those conditions and qualifications. Conditions and even qualifications on the commercial sale of arms. So what we have here is a condition on the commercial sale. And I'd be interested in your view as to why that heller language wasn't really D.R. made for the circumstances we have here. There are several responses to that error. One is that in the context of that statement about commercial retail sales, the court was talking about longstanding regulations. I mean, I believe that this is not a longstanding regulation. I believe this 500-foot rule was enacted in the 1990s in Alameda County. But the second reason is I think the case of Marsarella actually answers that very well. And it releases a note 8, which is also cited in this region. Commercial regulation of the sale of firearms do not fall outside the scope of the second amendment. Heller did endorse laws and those conditions and qualifications, but in order to uphold the constitutionality of a law, it was a good condition. The court must necessarily examine the nature and extent of the imposed condition. That didn't happen in the trial court. The trial court simply came into the position that the commercial sale is unprotected. So what would you suggest we do? Order Alameda to use with the complaint. Well, when you're in the complaint, is there an allegation that anybody's right to acquire the gun or use the gun is being interfered with by this court, by this ordinance, not to sell it, but to buy or acquire it? Your Honor, that would be akin to asking the person who is required to produce one that has been denied. I'm not asking to produce one. I'm asking to allege that somebody's right. I'm asking to amend the complaint in this respect to the district court laws of Alameda. I'm asking to close the complaint. I can't close the complaint, Your Honor, other than one of the board members, which comments foundationers, he lives two miles from the site. He would like to buy guns and have guns. Well, there are these kinds of conditions. I mean, an abortion case is the best example of that in terms of the There are restrictions on locations of abortion clinics that have been impounded since the New Jersey murder scandal. Well, the most recent case on that, and I would maintain as a pro-marriage in the district court, if you get married there, is the women's home health case. There were 15 factors that the Supreme Court looked at that said, must be measured to see if there was a burden on the right. Things, for instance, as the number of persons exercised the right to issue breath of clarity, I'd love to answer that question after some discovery. The frequency and rate of the right being exercised, I'd love to answer that question after some discovery. The fluctuations in the number of licensed facilities. We know that licensed facilities have been incorporated in California. They've been incorporated in Alameda County. They've gone up and down since this case was filed. I think this is a big data. There's a lot of other conditions. Jesse, are you there? Well, I'm trying to follow you, so if I don't have a good answer since this case was filed, then your allegation that there's no way to do it is not so? No. There have been fluctuations in the number of downstairs in the incorporated cities, Your Honor. In the jurisdiction of the originality of this unincorporated Alameda County, this 500-foot wall was designed and intended to stop the opening of new downstairs. I'd like to reserve the remainder of my time. Okay. Thank you. Thank you, Your Honor. This is the court, Brian Goldman, for Alameda County. I'd like to start by making clear what's not in dispute. The county agrees that individuals have a constitutional right to buy the mirroring arms of the facility and entitles them to keep and bear, but buy and sell the arms to save their activities. The right to buy a gun somewhere does not necessitate the right of a particular seller to sell guns at a store of his own, let alone in the location of his choosing. And what plaintiffs have not alleged here is... Mr. Goldman, this is a complaint I've also alleged. In paragraphs 27 and 59 of the medical complaint, there are services which he intends to provide which other retail stores do not provide, and the provision of these services as interpreted by the Alameda Courts are threatened by the Alameda Courts. So I'm wondering if the audience still realizes that issue here as it's reading and receives the instruction which the plaintiff alleges is a complaint by a league of the circumstances. So let me try to respond to that, too, and especially at first. As a matter of proceeding here, the allegation is that some of the, quote, big box stores don't provide those. There isn't actually an allegation that right now individuals are unable to or needn't be hindered from obtaining those services. She says that there's a market opportunity to provide them more of those services or provide them better or in a more convenient way, but that doesn't rise to the level. And when Sackett just says, oh, equal better, it's necessary to be precise about what exactly this ordinance does. This ordinance only regulates where the sale of firearms takes place. That's the only reason why this permit was denied. So had that plaintiff sought to go in a store or a firing range that offered training facilities and consultative services but not sell the guns, this ordinance would have had nothing to say on the subject of that. So the only potential injury that's caused here is the inability to sell drugs. Excuse me, is it that the ordinance were shown to be precluding anyone from offering these services in Alameda County, even though they might be able to do that in a joining county? Would your position be that that was constitutional? Let me just clarify, the ancillary services or selling guns? Well, if you start with the ancillary services in order to comply with California law, then you have to complete a better safety course if you want to go to a gun store and you can obtain a hunting license, or you'd have to take a safety class in order to purchase a handgun. So my answer would be the same if we're talking about the ancillary services, which is laying the challenge in the ordinance that it poses no obstacle to operating a business that provides those ancillary services. So my question was if they were able to show that those services were available nowhere in Alameda County but might be available within a joining county, would the ordinance be constitutional under the second amendment? Yes, because the ordinance wouldn't stop them from offering those services. Now, it has the question of whether there needs to be availability within the jurisdiction or whether you can walk to neighboring jurisdictions. That's a question that courts have come to different conclusions on this. For New Jackson, the state court addressed that issue in McDonald's where the argument was being made through the Mississippi South Circuit that it is ill, that just because it might be available in a joining suburb doesn't mean it's constitutional to forbid it in Chicago. Correct. The South Circuit said that it is ill. This court said the opposite. In Jackson, for instance, and part of the reason why San Francisco's ban on hollow-point bullets was permissible was the fact that that kind of an issue was available in neighboring jurisdictions. And this is very strange jurisdiction. It's not really a jurisdiction at all. It's a part of a jurisdiction that's behind the Alameda County and they're concentrating on it. Correct. And that's why this question isn't actually presented here because it's been disputed that drugs are available for sale in the unincorporated parts of the county. In the unincorporated parts of the county. It's like one county. Correct. And so if that question were presented, I think that here's what Wayne tells us. Here's what Wayne tells us. All the incorporated areas in Alameda County adopted exactly the same prohibition. So they adopted exactly the same prohibition as just including provisions especially where it's not very big. It's the same gun stores. Nothing would change. I would say that no gun stores are open in Alameda County. It gives you that early effect of the regulations in other cities with anybody deciding to go out of business and be replaced. Ben, that's incorrect. You're assuming that all future ordinances operate like this one where the permission to continue operating is another conformative use that runs with the land use. So this is section 17.52.741 of the Alameda County Code that provides for continued... That means that somebody could come in and purchase the signs and have the access to be able to be replaced for the same purpose. Correct. For 20 years. So, you know, it would be the highest amount of use in the 707-11, which means that it would be a little bit too easy for 707-11. Absolutely. I can say that for a couple of months. There's no obligation when it comes to this regarding the difficulty of opening stores. It is just an obligation. There is no obligation. Everybody has it. It's a municipal area. It's a plain and simple land. Correct. It's a plain and simple land. No new stores could open when we would decide to turn it in. It would keep that. I mean, 707-11. Correct. In the non-incorporated areas, a lot of time people in Wichita would be thinking, you know, the question, is it presented here, and if it were presented, we would say it's artificial, full of the dust, and non-continuous documents of non-incorporated county. You did a letter. You came here with a complaint representing a race district court, but they did argue that if you applied at 500 foot distance requirement, it would all be up to the other restrictive locations, the elementary, middle, high school, preschool, daycare, other firearm sales. They said they couldn't control their location with some of these things. So what do you advise? They said we should never, ever satisfy this requirement. We've got all these limitations together and we can never, we can never settle this. So what do you advise? Do you say there would be nowhere to open any new guns? But the question is, is our guns available for sale? I think it's, again, undisputed that there are two gun stores operating in the county, including in the unincorporated areas, and including the one that's 607 feet away. So it's a big issue. But you just said that that one isn't selling any guns. Is that true? Correct. That's not in the record. What the record does show is that the next, close to me, even, he can be fact asserted as true. The record shows that the next gun store is behind me in the driveway. What do you say? What are the health points? That's what the establishment has applied to. If you assume some, some ancillary right, which is all I was referring to, and you combine it with an allegation that the way this ordinance is being implemented, or not implemented, but being did today to show that they just can't, there's no location that would, that would limit the location. It's a point that I'm taking now. What would, for a first, two reasons. One is there would still fail to state that necessarily element of the second amendment claim, which is that there are individuals who are unable to buy goods because of the ordinance. If you're able to buy goods, you'd have an issue. Obviously, as a question, the question is, are you doing any of the ancillary services that are due to the selling of guns? Correct. So, same answer to, to that question. It's not an allegation that individuals are unable to do that now, or even needfully hindered from doing so because of the ordinance. So, as to the guns sales question, it's because guns are already available for sale and have been for 20 years under the ordinance. The EPA allegations have, you know, there are organizational plans involved here as well. They say that there are books now for the rights of their workers, their members. The other part of that is to, the necessary training prevents the accreditation to, you know, follow through on getting it. Right. So, why is it that, I mean, are we making any claims to a mandatory kind of claim? So, no, Your Honor, for two reasons. One is, again, this ordinance is nothing, I don't mean providing those sorts of ancillary services. So, this ordinance is no obstacle to making them tomorrow open in a store providing the types of services that you're supplying. So, I mean, we really need to separate out the selling of guns from the other activities. As per amendment, the complaint, the plaintiffs affirmatively waived that opportunity and then just recorded S.E.R. 14. I mean, if that were true, then the 7th Circuit was wrong in his decision and he's at fault for still opening a shipping range. There wasn't any discussion in the 7th Circuit's two opinions and he's at home that they were also buying or selling or gun smithing. It was just that they wanted to open a shooting range inside the 7th Circuit. And that's not an ordinance issue. They are expressly regulating shooting ranges. So, that was the case involving a challenge that had to do with a ban, an effective ban on providing entertainment or free entertainment here. They are challenging an ordinance that imposes no obstacle whatsoever on providing those services anywhere. All that the ordinance says is that firearm sales must take place in particular locations. So, even if they are not permitted to amend here because of waiver, and just assume hypothetically that the District Court has affirmed that if they were to walk out of here and get a couple of different organizational plaintiffs and also make the allegation that there had been individuals that were meaningfully hindered in their ability to access guns so that they could exercise their Second Amendment, would your answer be different then? Yes, if there were an allegation brought by a gun store, a potential gun store, prohibitive of the use  guns, a potential customer saying we are meaningfully hindered from producing firearms because of this ordinance, that would see a claim under the Second Amendment. If they had two opportunities to make those claims, is there no reason that we suspect they didn't make those allegations since those would be impossible given the availability of guns in the county as a general matter and simply a store could raise such a claim on behalf of customers? I'm not familiar with the terminology of conditions and complications. Is there a certain intention that this is not even one or five percent of gun sales? Yes, I saw the intention. I think our primary argument would be the same whether or not this fits within the category of something going off. Does the word conceding apply to the laws dealing with conditions and qualifications?  don't see any other cast out on such law extending even 30 minutes as conditions and qualifications on a gun sale. The court was broadly exempting gun sales from                                               this category. With regard to neighborhood gun stores, in 2015, of course, it's a new fact that Alameda is now requiring retail and residential high-density zoning. So, in the future, as Alameda starts restricting the places for new building of residences and retail establishments, we're going to get into an even worse problem. There's no faster way to turn this court into a zoning board than to take out arbitrary numbers like 500 foot or 10 store store. And as soon as the municipalities like Oakland or Dublin start imposing the 500 foot rule because you get the free range, we're going to lose all of them. This is a case of first impression. You should find that my clients have the second opinion.  think that the second opinion is an important part of the second amendment. I'm curious about your co-counsel with entities that provide training in Alameda County. Are there people's homes where training is offered, where the LHT fire rounds and basic training are provided? Our research shows that up to 40% of the NFL's in Alameda County are located at residences. They may be close to the fire rooms. I guess my question was, there was questions about whether gun training would be provided in Alameda County somewhere other than a gun store. The answer is that there are gun stores in Alameda County. The question was, if it is offered in places other than gun stores, you can go to a residence and receive gun training in   Alameda County. The  was,       than gun stores, you can go to a residence and receive gun training in Alameda County. The answer was,    offered in  other  gun  you can go to a residence and receive gun training in Alameda County. The answer was, if it is             and receive gun training in Alameda County. The answer was, if it is offered in other gun stores,
judges: Reinhardt, Thomas, McKeown, Gould, Paez, Berzon, Tallman, Bybee, Bea, Watford, Owens